I guess where I was hoping to start out with today is the question of what the scope of the charge conspiracy was in this case. The question is whether the five kilogram March 30th transaction at Hawaiian Gardens and sort of whatever was happening on February 29th with the Long Beach where Mr. Burris was arrested at the Long Beach airport with the cell phones and the gun and the ledgers, whether or not that's part of the that's part of the same conspiracy as the shipment of narcotics to St. Louis in the day that the shipment happened that sort of started after the Mexico trip in August and August 16th of 2016. You know, the government characterizes our argument as one where a change in supplier or locale, a city somehow obliterated one agreement and created a new totally separate agreement. Right. That's not exactly what we're arguing. What we're arguing is that prior to August 16th, when Mr. Burris, Mr. Rourke and Mr. Richard Rourke, Mr. Rourke's brother, traveled to Mexico, Mr. Burris and Mr. Rourke didn't have an overarching or overall general agreement. What there was before that was isolated, like sort of single day conspiracies, sort of the purpose was to do one shipment. All of that was paid up front. Right. And the conspiracy ended once that shipment was made. It's sort of a prototypical one day drug conspiracy. You know, that's totally different from what was going on in St. Louis. In St. Louis, there was, you know, third party location, there was fee splitting. I just think it's totally a different beast. Counsel does that. Go ahead. I was going to ask what the what was the jury's role in this? What did what did the jury find? Well, I think that's the question. I think the jury's role should have been to determine whether or not, you know, there were multiple conspiracies. The jury obviously found Mr. Roy Burris guilty or we wouldn't be here. But the district court didn't issue an instruction saying, you know. So is this only an instruction argument? No, it also, I think, is relevant to the question of whether or not this should have come in for prior bad act, whether or not should have been excluded as propensity evidence. The court said that the Hawaiian Gardens evidence and the Long Beach airport evidence came in because it was part of the charge conspiracy. Sort of like, you know, res gesti of the offense. And we're saying, no, it's not. And the fact that it came in for that reason also complicates the problem of we don't know if that's what the jury convicted on. And again, I don't think that this was the Hawaiian Gardens or the Long Beach airport can be part of this charged offense. So. Well, counsel, the government does focus on location and and what you said, but but when I got down to making a chart, boy, it's 18 kilograms way back March to November, November, 20 kilograms, a note show 50 kilograms and the St. Louis 10 kilograms then looks pales in comparison. Does the quantity affect it here at all? I didn't see that argued, but maybe I missed it. They didn't make that argument. I think the quantity. I think the answer to your question is, no, the quantity shouldn't affect, you know. If there was a huge amount of interdependence shown, maybe I could see that being an argument for there being a preexisting, like more general agreement than individual transactions prior to that trip to Mexico. But I don't think you get independence here. You know, Mr. Rourke testified that his sort of main thing was a drug distribution network in Chicago, that, you know, he also testified Mr. Burris had nothing to do with. Similarly, Mr. Rourke's understanding was that Mr. Burris had drug connections in St. Louis that he had prior to August 16th, nothing to do with it for all the world. It looks like these two people had like separate organizations or separate, I don't know, drug places that had an occasion on three specific occasions came together to do isolated transactions. Council, why is on the, I mean, to break out the instruction and the 404B issues on the latter, you can have intrinsic evidence that's not within the four corners of a charge conspiracy. I believe there's case law to that effect, but, and on top of that, why aren't the earlier transactions relevant evidence to participation in what conspiracy at what point in time? I think the first question, first inextricably intertwined doctrine. I don't think it works here. That's for when you need to complete the story somehow. I think two points. First, this is this is starting the story. I don't think the wine garden starts the story here. The story starts some six months later when they go to Mexico. The government's argument is that, well, it explains why Mr. Rourke had to change dealers. Respectfully, Mr. Rourke testified that he had to change dealers because he had lost, I think, near a million dollars of drug seizures in Chicago. This was one of those seizures. But I don't think you need. All the details of the Hawaiian garden, the Hawaiian garden transaction to explain why Mr. Rourke might want a new drug, a new supplier in Mexico. The guy had threatened to kill him because he'd lost a bunch of money in Chicago. I really so I don't see that the inextricably intertwined completing the story gets you there in terms of 404B. I think I kind of have to concede that. You know, the fact that there have been transactions between Mr. Rourke and Mr. Burris in the past, just that fact might be relevant to establish some level of trust. Right. That might be a legitimate use for those for that. But again, I don't think that gets you the detail. And Mr. Burris, excuse me, and Mr. Rourke did testify to the fact that and as the government pointed out correctly in its brief, we did not object that he had engaged in other transactions. They weren't going into any detail. And I don't think anyone argued that those two transactions are part of the charge conspiracy. In addition, Your Honor, if there was some 404B, some reason why this should come in under 404B, I think that we needed a limiting instruction saying at least that the jury can wait, wait, wait, counsel. Intrinsic evidence is not 404B evidence. I agree with you. I'm saying you don't need you don't need an instruction. You don't need a 404B instruction if the evidence is admissible because to complete the story or intrinsic or the other ways you can describe that type of evidence. Our position that it can't come in for that, that it's not intrinsic to the charge conspiracy, that it doesn't explain the context and that it isn't necessary to complete the story. Again, the only basis for it being sort of intrinsic is that the government presented was that it sort of completes the story by explaining why Mr. Rourke needed to find a new supplier. And again, I don't think it does that. It certainly it doesn't. Mr. Burris's flight, the amount of money involved in this one transaction is not necessary to complete that story. And, you know, as Mr. Rourke explained while he testified that it wasn't just there's a direct quote from his testimony that I can find that it wasn't just this transaction is why he needed to find a new supplier. He needed to find a new supplier because the DEA had been fairly successfully confiscating a lot of his narcotics for the past period of time since their investigation began. I'm getting extremely close to my rebuttal time, so I wanted to, if I could, just for a second, talk about the undue delay doctrine. I just something that I think is kind of preemptive, maybe of the whole issue is whether the cell phones were independent, evidentiary value and just evidence themselves. The government cited two cases, Thompson and Spires, that say that. I don't think you replied to specifically those cases. I understand you replied the argument. Do you want to reply to Thompson and Spires specifically? Not. OK, proceed. Specific reply at this time. Proceed. I agree with you that I think that that's their best point. I don't think that the first of all is to whether or not the. The excuse me, the cell phones are direct evidence on the gun case and that they could be seized for that reason, I don't think that necessarily works because, again, it's sort of. The evidence that Mr. Burris owned the gun is identical to the evidence that on the cell phones and that the same bag, I think that's kind of like seizing somebody's couch. What struck me is that there was no request for return and the seizure was was was lawful. And so the the the cell phones were in the government's possession. Lawfully, with no obligation to affirmatively return, particularly if they are still investigating whether this might be relevant evidence. So why, as long as there is probable cause at the time the warrant is applied for, why does the delay? Why is the delay even relevant? Well, I think that line of argument completely obliterate the undue delay doctrine, because an undue delay. No. A, if there's a request, it's a different story. B, if the seizure is an issue or has to be terminated, if it's a Terry type seizure, so it can only be held for a reasonable time, then you've got, then your argument becomes much stronger. But those factors aren't present here. I think that even when it's a probable cause seizure, and obviously there's always going to be probable cause when the warrant is applied at the end, when the warrant is issued. Right. Sort of the undue delay doctrine. Eventually, there's going to be probable cause. Well, you have staleness issues and so forth. I mean, the probable cause can be dissipated by delay, but that's not that's not the issue here. Right. Our position is that probable cause at the time of the seizure, I think, which is the relevant question, might be a factor that weighs in favor of saying the government had a interest on the government side of what the interests were in this case. However, you also have to consider that, you know, the defendant's possessory interest in the length of the delay and the justification for the delay. And in this case, eight months is an exceedingly long period of time under the case law. And the justification I don't think is one that holds up justification for the delay here being to allow the sort of larger investigation to go forward. But the information that ended up going in the warrant affidavit was the same information that Masterson had immediately after or to after he was contacted regarding Mr. Burris's arrest and seizure of the weapon. So in that sense, I don't think, you know, yes, I agree with you. And the lawyer did. But regardless, I don't think the cases say you need to request the return. Right? What what cases cases in what context? Well, you have he didn't. He didn't. He didn't request the return. Probably. He didn't request the return. Because he knew that would trigger their search to his disadvantage. That's that's that's as logical as, oh, an inadvertent or my lawyer messed up or whatever. I have no idea why the specific phone that he requested, he requested or didn't request. But the government, the government had no affirmative obligation to hand them back. I believe your honor has an affirmative obligation to seek a warrant without, you know, reason it was reasonable diligence. And if they either don't seek the warrant, then they do have an obligation. You must you've got more experience than I. I would have thought evidence seized at a crime scene can be held during the remainder of the investigation, the indictment and prosecution and so forth. If there's no law, you don't the police don't have to run and get a warrant to retain crime scene evidence, do they? They do not. But they have to. If it's not inherently incriminating, I believe that they do have to return it, you know, or get the warrant. If it's before the end of the prosecution, you know, this is brand new. If you've got case law to that effect, I thought they I thought they held evidence absent a request for return with good cause to make them relinquish what's being held as possible evidence. They just hold it. Again, your honor, I think that that's assuming that it's inherently incriminating in. No, no. It's relevant. Right. It's relevant to prove. You're right. I'm using incriminating in the right. It's relevant to prove the offense charge. Right. Or the criminal conduct charge or under investigation or to pursue or to pursue the investigation, for example, by at some point getting a warrant to when it's a cell phone. You need you'd need a warrant to open it up, but you're holding it in the likelihood or at least the strong possibility that that will become what you need to do. And I don't I don't understand an affirmative obligation not to do that. I think when it's a closed container, that isn't the outside of which is an inherently incriminating, which I understand the government's argument to be. They do have to act with reasonable diligence or return it. A Supreme Court case for that. Close container. I mean, place you have. You see, perhaps the Second Circuit case, I can look at it during the rebuttal. I mean, the undue delay doctrine as it applies to cell phones, even cell phones that have been seized lawfully by the government. There's many, many circuit court cases on that that we cite in our brief. Do they involve no request situations? Do they say the government has to go seek out the party who was searched and hand over the picnic basket or whatever it was that was taken? Yes, some of them do. I will find them during the government's case. They're in my cited in my brief. I just want to make sure I don't cite the wrong ones. Certainly, whether or not there was a request is a relevant consideration, but the lack of a request is not this positive in those cases. And with that, I am well into my rebuttal time. So I'd like to reserve the remaining. Good. Thank you again. Thank you. May it please the court. My name is Lisa Young, and I'm appearing today on behalf of the United States. Appellant is obviously asking this court reverse the district court's ruling on his motion to suppress the contents of the seven cellular phones that were seized from him at the airport. As an initial matter, I'd like to clear up any factual dispute as to whether these phones were requested to be returned. First of all, the magistrate court, whose factual findings have not been objected to and are not at issue here, found that Mr. Burris chose not to request the return of his multiple cell phones, despite seeking the return of some. Counsel, it would be helpful if you would, if you would comment on the legal legal issue that was at the end of opposing counsel's argument, which is regarding pressure and everybody's mind. Regarding whether or not the government have an affirmative duty to get a warrant when it's retaining the crime scene evidence for investigation and or prosecution. No, your honor, it does not. That evidence can be held and maintained. Counsel is looking for case law. Do you have it while you're on deck? I believe Carpenter out of the Fourth Circuit is one of those cases. That case is that case is cited by the Fifth Circuit in Pratt. Pratt is a Fifth Circuit case that recognizes the independent evidentiary value of that exception. It likens it likens it to a murder weapon. For example, the quote in Pratt says, you know, if this was a murder weapon, we wouldn't have to give it back. It cites the Carpenter case in which a bag from the airport was seized and maintained as actual evidence. And I believe later. So that you counselor talking past each other because the appellant's argument is these did not have independent evidentiary value. If they did, then there's not much to this argument. But her argument is this is like a picnic basket or some other clothes container that doesn't have any apparent relation to the offense under investigation. And what we were discussing is whether in that situation, if we assume for the sake of analysis that there's not independent evidentiary value in that situation. Is the government obliged to say, well, this picnic basket isn't relevant to the investigation. So we have to go find the guy and give it back to him. Or can they just leave it in the evidence locker for indefinitely? Do you have any law on that? Well, judge, there's federal there's federal rule 41 G that provides them a remedy in the case where they believe there's been an unlawful search and seizure for them to request the property back. And they didn't in that case. So I think the presence of that federal rule suggests that the burden would be on the possessor of the property to to request. And then there is a legal process for them to get it back that way. That did not happen in this case. The phones were never requested by Mr. Nyland, the appellant's lawyer, and they still actually haven't been requested. And they are going to be evidence in Mr. Burris's federal gun case, which is currently set for November. I think another point to that is that only in our current case, to bring it back to our current case. Only contents from four of the phones was actually admitted as evidence, but all seven of the phones were admitted as evidence in the government's case in chief. Because in this case, they did have independent evidentiary value based on the testimony from the investigators and the expert that this number of cell phones is indicative of drug trafficking. I also want to seize on the point that they are evidence of the gun charge because Mr. Burris did make statements. We have evidence to this at the evidentiary hearing that he affirmatively and knowingly possessed those guns. He stated that to Officer Dallas. And there is case law cited in our brief that where the defendant says he knowingly possessed some items that are found in proximity to the disputed item. Here, the firearm that that's exactly the type of evidence that's been admitted to show that he has dominion and control over the firearm. Does that answer your question, Judge? Well, to some extent, although this Pratt case that you talked about did hold that when the government held a cell phone for 31 days. And in that case, they said the phone did not have independent evidentiary value. The court upheld a suppression of the evidence that was found on the phone on the view. I guess that the person from whom it was seized retained a possessory interest in the phone and the government was required more diligently to seek the warrant. That's absolutely true, Judge. But the Pratt court did recognize that in a case where the phone did have independent evidentiary value, it would be a different analysis. Well, I know. So is that what it comes down to? You lose here if you don't have independent evidentiary value. Are you are you conceding that you waited too long if there's no independent evidentiary value? No, Your Honor, because one thing the Pratt case also says is there isn't a bright line and that this is a multi-factor analysis. And this court in May's, which was just decided this past spring, lays out that multi-factor analysis. It clearly says there's no bright line. The 8th Circuit declined to put an outer limit. It said as little as I think it was as little as six hours, as much as three months, citing the Stabile case that was a three month delay. And it really emphasized that you're looking at all these factors and circumstance, the length of the delay, which if you if you had to get to an undue delay analysis here, you don't think you do because of independent evidentiary value and the harmless error argument, which is strong. But the length of the delay would would weigh against if you're doing the analysis the 8th Circuit set out under May's. But you've also got the possessory interest, which here is significantly diminished because he didn't ask for them back. And the Supreme Court case of John's almost suggested that's dispositive. You also have the nature of the property. He had seven cell phones, which the evidence came out he replaced within a month because he was talking on Title III wire intercepts with Mr. Roque. You have the issue of consent. You have the issue of whether there was probable cause, which I believe counsel conceded there was. You have the government's strong interest in maintaining the evidence. You have the complexity of the investigation, which the magistrate judge factually found was of undisputedly complex, utilized Title III wire intercepts. And you do have the government, you know, diligence issue, which, well, that is under dispute. And I understand that the government or the magistrate judge found that as soon as Masterton was advised that the drug trafficking investigation was complete, he did apply for the warrant. And she did factually find that a delay. The delay was to permit the conclusion of the larger complex investigation. So I don't think it's just as easy to say, you know, if they didn't have independent evidentiary value, you lose because you still have to go through factor by factor under current Eighth Circuit law. Counsel, from your research, is May's our only case directly addressing this? Yes, Your Honor. Okay. And doesn't it infer that about the longest period of time you're going to get by with is three months? It cites to be ill for that proposition, but it clearly says there is no bright line. Yes. Thank you. If there's no other questions on that issue, I would like to address counsel's argument regarding the multi conspiracy. The multiple conspiracy argument. The district court, with respect to that, I think correctly found that this is an effort or an attempt to slice a loaf of bread was the district court's quote. And the Johnson case from the Eighth Circuit that cited in our brief seems to clearly state that this buyer seller idea. Isn't not is not appropriate when there's evidence of multiple drug transactions as opposed to a single isolated sale, especially when there's multiple transactions, at least one of which was in an amount for resale that that doesn't support this idea that there's a buyer seller. And I think I think it doesn't make any sense to say you can have these large scale drug transactions that repeat over time. And then suddenly you say that's a separate conspiracy. That's a separate conspiracy. That's a separate conspiracy. And now we have a new separate conspiracy when that's not what the evidence showed in this case. Of course, you can argue that you got an uphill battle after after Pinkerton, which was many decades ago, but that's what defendants always argue. Now we're talking about issues on appeal. Instruction and and I guess an attempt to drag this into 404 beep territory. Judge, with respect to the instruction that they requested, the defendant is entitled to the instruction if it's timely, correctly state the law and supported by the evidence. The multiple conspiracy instruction that they actually requested was to find that there was a conspiracy between the original supplier. Cazares, Roque and Burris to distribute drugs in California. And on the other hand, between Avendano, Roque, Richard Roque and Oscar Dillon in St. Louis. The fact that they completely tried to leave Burris out of this conspiracy to bring drugs to St. Louis, Judge Simple correctly found that wasn't supported by the evidence in that case. And so I don't on that basis. I don't believe they were entitled to that instruction. And he didn't decline to give the instruction because the defense had proposed a bad alternative. Did he? He declined to do it on the merits. I believe it was both. He specifically said that they're leaving. Yeah, he said he said, I can't I can't give yours. That's not it doesn't state, you know, the second half of the equation properly. But that forecloses him on appeal from the more important issue. Well, I mean, I think it means he wasn't titled entitled to his proffer jury instruction. But yes, in some cases, some in some cases, that's the end of the story. But I don't think it should be here. And Your Honor, on the merits, Judge Simple was correct as well. The transactions to between Mr. Burris and Mr. Roque to deal in large distributable amounts of the same drug, which was cartel sourced cocaine, are part of the same conspiracy in this case. And simply because you have what moved from being paid up front to going in on the profits. That's an evolution of the conspiracy that a circuit cases have recognized as possible in Hayslip and Perez Trevino and Delgado. They all recognize that conspiracies can move into different phases. It also makes perfect sense that Mr. Roque would be more willing to get fronted drugs to Mr. Burris. Excuse me, but Judge Simple didn't prevent the defense counsel from arguing the this. This wasn't all one conspiracy, did he? No, he did not. And in fact, they. OK, so so we're talking about the line between when permitting the argument is not sufficient. You have to give the multiple conspiracy instruction. You haven't addressed that. I'm pardon me, Judge. I'm trying to understand. Well, you're saying there. Yeah, there are cases out there where the government proves proves that what the defense thought was multiple conspiracies. The jury could properly find one. But the question is, Judge Simple allowed that to go to the jury. The jury found one, obviously. The question is, when does the court have to go beyond permitting free free range argument and actually point the jury to the issue that defense counsel wants to argue? Well, I would say as an initial matter, if the evidence supports a single conspiracy failure to give the multiple conspiracy instruction is not reversible. So I think the evidence in this case does support a single conspiracy. And therefore, Judge Simple's failure to give the instruction certainly isn't reversible error after he'd seen all of the evidence in the case. So we've we've never reversed that. We've never reversed the failure to give the instruction because whenever the because the jury could have found a single conspiracy. I think we've got some cases that are more look more closely than that. I'm not saying never, Your Honor, but I'm citing Johnson for that proposition. And that's that's in other cases as well. How do you how do you want us to draw the line? You want us to draw the line that basically says never as long as we as long as we've introduced evidence would permit a jury to find a single conspiracy. The court never has to give a multi conspiracy instruction. That's your argument this morning. And I don't think we can write that. That's the case. That's the existing case law in the circuit is that it's not reversible error. Well, now you're in Haislip and Perez Trevino doesn't say sufficient evidence is the standard. I'll quote it. We reviewed it over the legal question whether sufficient evidence is adduced at trial to sustain the instruction. Yes, Your Honor. How do we know when there's substantial sufficient evidence use the wrong word sufficient evidence? Sufficient evidence to sustain a multiple conspiracy instruction judge. How do we know when there's enough? They in determining that this court reviews evidence in the light most favorable to the jury's verdict in that case. And in this case, that would be to the single conspiracy. It says after sufficient evidence as was adduced at trial. I think it's measured not after the jury verdict, but before. Go ahead. Your Honor asking for the specific facts in this case. That would seem that would tend to show there was sufficient evidence to do is that there was a single conspiracy. Is it? Are you asking a factual question here? Well, though, that's the that's the net. I think that's the backing off. Judge Locke is never a position. It's a sufficient evidence question, right? That's correct, Judge. So the question is. What if the evidence would allow a jury to find either a single or a multiple? Does that mean there must be an instruction in that situation, even if the evidence was sufficient to find a single? And if so, how strong does the evidence have to be on multiple to get the instruction? Is it just sufficient that a jury could find multiple or is it something more than that? Um. Judge, I think that's a difficult question to answer in this case because the evidence was was all that there was a was that there was a single conspiracy here. And I think it was strong. You know, if you would prepare to help us when there's a hard question like that, that's what we need. Understood, Judge. Because even if the evidence would support multiple, the jury could still find that even without the instruction, the jury could still. I suppose not hold him accountable for stuff they think is not part of the charge conspiracy. But at some point. Is he entitled to an instruction that flags the issue for the jury or specifies the issue for the jury? I guess you don't really have any view on that that you're prepared to state. No, Your Honor. Well, Judge, I would say to determine whether multiple conspiracies exist. Campbell has pointed out that the court considers the totality of the circumstances, including the nature of the activities involved, the location where the alleged events of the conspiracy took place. The identity of the conspiracies involved in the time frame in which the acts occurred, and it weighs those factors. All right, let's let's. Miss Westover, I'll give you I'll give you two minutes for a quick rebuttal. I think you used your time. Thank you, Your Honor. Just to answer your the court's question. I believe Burgard, Pratt and Mitchell, which are not from this circuit. That's the 7th, the 2nd and the 11th are all cases where the defendant did not request. The computer or cell phone respectively back. However, I can do supplemental briefing on that to make sure, because obviously I didn't read the complete text of those cases again in the last couple of minutes, and I don't want to misrepresent anything to the court. Just real quick. I want to point out one thing regarding the necessity of the instruction. In this case, the government in closing argument, at least implicitly use the absence of an instruction to say that trial counsel's argument that the Hawaiian Gardens transaction wasn't part of the charge transaction. Can you give it? Can you give us a transcript page of where you're talking about for implicitly? From the February 11th, 20 page 92. Back to the notes. Millions of dollars. Sorry. Oh, that's a different one. Yes. They said that I don't have the quote here. It's going to be on that page. That he said that Mr. Brinley discussing the law. Says it does explain how conspiracies work. That's not how conspiracies work. And then they said, look at the instructions in the case as the judge reads them to you. And you're going to see that. That's not how the conspiracy works, not how conspiracy works. I'm looking. I don't. Is there any way I can supplement that? No, that's all right. We'll find it. Okay. There's the harm to the defendant. If there's no instruction, as long as the defense can argue, they charge to such and such conspiracy. They've put in evidence that we say isn't about that conspiracy. And so they either they haven't proved the charge conspiracy or the evidence on the charge. Conspiracy is weak because the other stuff they put in is unrelated. Why can't you argue that without instruction? Why is the instruction such a big deal? Because without the instruction, there is. For the same reason that any time the defense presents a defense instruction that supported by the evidence, it can be prejudicial because there's no instruction supporting it. And without it, there's no reason why the jury would credit the defendant's understanding of the law as different than the government's understanding of the law. I think that really realistically in this case, it's not a law question. It's a fact question. It is. But the question is, you know, what is the scope of the agreement? Right. And I think that that has to do with the fact that there can be separate conspiracies is not necessarily intuitive to a jury or to lay people. The fact that two conspiracies can be totally separate or, you know, that that's a basis for acquittal. I think it's difficult to get across to a jury. Well, I think if you if you play cards with your high school friends on Friday night and with your college friends on Saturday night, a juror would would would not say that was one conspiracy or agreement or collaboration. I also think that reminding the jury that it's important to make sure that they're convicting of the charge defense is important to these cases because we are asking the jury to do something that's a little difficult, which is to essentially acquit. Despite the fact that you're conceding the defendant committed a very similar crime. OK, well, I think I think we understand the issue and argument has helped to bring out these points that can be difficult or at least tricky. So we will take the case under advisement.